Good morning. Have a seat, please. All right, call the first case. Case number 12-1069, Ivo v. I.V. Kelly. Could we have counsel who are going to present, approach the podium, and identify yourselves, please? Good morning, Your Honors. My name is Brian Reyna, the Office of the State Appellate Defender, representing the appellant I.V. Kelly. I'm Assistant State's Attorney Tasha Marie Kelly on behalf of the people. Thank you very much. Mr. Reyna, you're going to give us a rebuttal today? Yes, with your permission, I'd just request five minutes. Very well. Okay. Whenever you're ready, you can proceed. May it please the Court, I.V. Kelly's conviction rests entirely on the pretrial statements of two witnesses, Christopher Lacey and Paula Scott. There was no physical evidence, no connecting Kelly to the shooting, no forensic evidence, no ballistic evidence, no statement from Kelly. And at trial, both Lacey and Scott failed to identify Kelly as a shooter and weren't even sure he was at the scene. Moreover, Scott admitted that she only implicated Kelly because Lacey told her to. So the real issue is the reliability of Lacey's pretrial statement. There are three things we didn't know at trial about Lacey's statement, about the circumstances surrounding Lacey's statement. First, he was under arrest for domestic disturbance and was released uncharged after implicating Kelly. Second, Lacey had a leniency agreement with the federal government and received payment. And third, he believed that by helping police, he could benefit himself. An evidentiary hearing. What do you mean by that? In what way? The transcripts attached to Kelly's petition show that at the co-defendant's trial, Lacey testified he was uncertain about the status of two federal drug charges, and that he was concerned he would have to do, and did not want to do a lot of time in federal prison. And that he thought the system worked in a way that if he gave police something they wanted, they would be able to help him with what he wanted, which is not going to prison. So an evidentiary hearing is required in this case to determine if counsel is ineffective or to determine if there is a Brady violation. How do we know that trial counsel wasn't told these things? The state makes the argument in their briefs that it was incumbent upon you to provide affidavits establishing that this information was not tendered. Well, first of all, it's in the trial record that counsel knew Lacey was under arrest and left the station uncharged. Counsel made that comment in his opening statement. Say that again. Trial counsel knew at the time of trial that Lacey implicated Kelly while Lacey was under arrest. He said that during his opening statement and then failed to present that evidence. So your argument in that regard is ineffective assistance? Right. That's one way in which counsel was ineffective. Frankly, if I'm wrong, wasn't your opening comment that there were three things you didn't know at the time of trial? But now you're saying you did know that. Counsel made a statement in opening argument saying that Lacey was in custody and implicated Kelly to get out of that situation. But he didn't specifically introduce evidence that he was in state custody for a domestic disturbance and he didn't specifically elicit evidence that he was uncharged. So the judge really didn't get to consider that. All right. What about the state's argument that regardless of whether or not you knew before the trial, that counsel failed to follow up with questions with regards to that issue? I mean, it could have been determined during the questioning of the witness, couldn't it? I'm not sure I understand your question. All right. Well, the state's saying that if there were follow-up questions. By defense counsel. Right. That it's possible that the information could have been ascertained during the trial. Well, that's correct. The transcripts attached to Kelly's petition establish that the co-defendant's attorney discovered that in addition to being under arrest when he implicated Kelly, Lacey was a federal informant who was paid and had counsel question him about that. That would have come into evidence. But Kelly alleged in his petition that counsel did not discover that evidence and there's nothing in the record contradicting that allegation. So counsel's theory was that Lacey's statement was unreliable, and if he didn't look into evidence that Lacey was paid, he would have been ineffective for that. But doesn't that tie into the issue that defense counsel already knew before the trial? I mean, for them to argue that if you would have followed up with questions during the trial, you would have obtained the information you needed. It kind of implies that defense counsel was already aware that Lacey had a background and that there was something that needed to be inquired into. If counsel was aware of that, if that comes out at the evidentiary hearing that counsel knew this, which is a possibility that counsel needs to testify about this at an evidentiary hearing, it would bolster Kelly's ineffective assistance of counsel argument because it would show that not only did counsel know that Lacey implicated Kelly when he was under arrest, he knew that Lacey was a paid federal informant and didn't want to go to prison, giving him additional motives to implicate Kelly that he didn't introduce. So regardless of what the situation was, if counsel made an effort to discover this and the state refused to disclose the information, if counsel did not make any effort to discover this information, or even if counsel did discover this information and failed to present it, all of these things benefit Kelly because counsel's theory was that Lacey's statement was unreliable and none of this evidence was presented even though counsel told the court he was going to present evidence showing that the statement was made in circumstances that undermine its reliability. To make it simple, and I think it's very simple, counsel knew that Lacey was an informant and he didn't explore it. That's right. He did nothing about it. That's correct, Your Honor. And that was the theory of the case. I mean, it's inconceivable that counsel would not have made any effort to discover evidence supporting the defense theory and that he wouldn't introduce some of the strongest evidence he had. At what point did he become aware that he was an informant? The state disclosed that in their discovery answer. The state did not disclose, at least in the documents in the record, the terms of the federal informant agreement. So while the state argues that the informant agreement was resolved, I mean, we know nothing about the terms of the agreement, and we have statements from Lacey that Kelly attached to his petition saying that he did not believe the case had been resolved, that he thought he could still be charged with this. And that's relevant to the circumstances in which he made it. He was still charged with what? With the two federal cases. Okay. And Lacey was in prison in 1998 on some state drug charges. He was approached by federal agents who said, hey, you sold cocaine to two federal agents twice in 1997, but if you become an informant, you know, we won't charge you with those cases. So those were uncharged. We don't know if they were dismissed with prejudice. Lacey didn't seem to believe they were. I mean, he thought that was still something that was hanging over his head when he made the statement. And he was also released from custody on a state charge. And so those are two instances in which he benefited possibly from implicating Kelly. How did Hampton's attorney find out about all this stuff? Is it in the record? It's not in the record, Your Honor, and maybe that's something that would be beneficial to learn about at an evidentiary hearing. But we do know that he discovered this information in the terms of the informancy agreement. When he questioned Lacey at the co-defendant's trial, he asked Lacey something along the lines, weren't you a paid informant? And Lacey said, yeah, I wouldn't really say that. And he said, well, you got $600, right? And Lacey agreed. So the terms of the agreement were discoverable. Was the $600 disclosed to you, to your client? To my client? There's nothing in the record showing that it was, no. The discovery answer just said that Lacey was an informant. Oh, it's not relevant. What happened in the Hampton trial? The co-defendant was convicted as well, and he was sentenced to 20 years. This evidence was critical because the reliability of the prior statements was at issue. Lacey didn't implicate Kelly until three and a half months after the shooting. He testified at trial that he wasn't even sure Kelly was at the scene. In fact, the state points out in its brief that Lacey testified that after the shooting, he went to go get Kelly because the decedent was his best friend, and that that would be absurd if Kelly were the shooter. I think that they're right about that. That would be an absurd thing to do, but we know it was done, suggesting that Kelly was not the shooter. Lacey has never identified Kelly as the shooter. The only person who ever identified Kelly as the shooter was Paula Scott, who on the night of the shooting testified that she didn't recognize the two men that approached the decedent. She subsequently gave a written statement saying two men had guns, which is inconsistent with Lacey's prior statement. Then at the grand jury she said only one of the people had guns, so her statements are also internally inconsistent. And then at trial she said what she said initially, that she didn't recognize the people and didn't recognize Kelly as one of them. There was also evidence, Kelly put on an alibi defense, and portions of Lacey's testimony corroborate that. Kelly testified that he was at Maury Scott's house, and Maury Scott testified to this as well, and that Lacey arrived after the shooting and told him what happened, and took him to the scene of the shooting. Lacey agrees with all of that, that he found Kelly at Maury Scott's house after the shooting and took him to the scene. So the bottom line is that Lacey's pretrial statements were the strongest evidence against Kelly, and had the judge learned about the circumstances surrounding those statements, it would have raised a doubt as to their reliability, and that's the only evidence supporting Lacey's conviction. I have one other question. Do we know if there was direct promises made to Lacey regarding this trial? Well, I think that needs to be decided in an evidentiary hearing. I think the state will say that at the co-defendant's trial, Lacey said that he did not have an agreement with the federal government for the murder case. But again, the entire transcripts of Lacey's testimony aren't attached to Kelly's petition, and regardless of whether the agreement existed or not, Kelly believed that those charges could still be, he could still be prosecuted for those federal charges, and that he needed to do something to make sure he wasn't charged for those cases. So while he's saying there's no agreement, he's also saying, I have a motive to implicate Kelly. Are you abandoning your theory that the state committed a Brady violation? No, Your Honor. That issue is essentially just intertwined with the ineffective assistance for failing to discover the payment. I mean, they did tell you that he was an informant. Right. Do you believe they have to give you all the information that's available? Yes. If the state felt it was relevant that he was a federal informant, the terms of the agreement would be relevant. And I think the issue here is that we do have some questions about how much counsel investigated that, and if he ever asked the state for this. If counsel testifies at the evidentiary hearing that he did, in fact, I still haven't answered my question. I mean, how far does the state have to go? When they tell you somebody's an informant, they have to tell you how much money he was paid, what he ate for breakfast, lunch, and dinner? I mean, where does it stop? I mean, they tell you he's an informant. What more must they tell you? Well, the Brady violation is an alternative to the ineffective assistance allegations. So if counsel knew he was an informant and didn't follow up, he's ineffective. If he testifies that he did follow up and the state refused to give that information, the state does have to disclose that because they decided that. But that's not part of this case. There's nothing that shows that the state refused to do anything here. Well, what shows that or what supports the allegations in the petition is that none of this was presented to trial, and there's nothing indicating that counsel had knowledge of the terms of the agreement. So if he says, I tried to get this, and the state wouldn't give it to me, then there's no reason. This is not a but-if situation here. I'm sorry? This is not a but-if situation. I mean, if you file a post-conviction petition, you have to be able to know the facts. Well, sure. I mean, in any argument, there are questions. The reason we need an evidentiary hearing is there are questions about what counsel did with this information. We know it never came out at trial, and that is prejudicial to Kelly. Whether it didn't come out because counsel failed to investigate it or the state failed to disclose it, those are both relevant considerations for the evidentiary hearing. And also, the state found that this was, and you say it has no relation to this case, but the state disclosed that he was a federal informant, so the state must have felt that it did have a relation to this case. They disclosed that on their own, so I think it's a hard line to say, well, we can tell you he's an informant, but we're not going to tell you anything about that agreement. I mean, if you're admitting that the fact that he's an informant is relevant, then the terms of the agreement have to be relevant. Let's go ahead and wrap up. If you have no further questions, Your Honors, we would ask that you remand Ivy Kelly's case for an evidentiary hearing to determine if counsel is ineffective and if there is a Brady violation and if a new trial is warranted. Thank you, counsel. Thank you. Again, may it please the Court, I am Assistant State's Attorney Tasha Marie Kelly. The second stage dismissal of defendant's post-conviction petition in this case was correct, and it can be affirmed by this Court for three separate reasons, the first one being that the defendant clearly demonstrated an intent to abandon the Brady claim at the hearing on his motion to dismiss, second, because the defendant has failed to properly fulfill the 122-2 requirement, which is of particular significance in this case, and number three, because he simply has failed to set forth a substantial showing of any of the claims that he's presented to this Court, either the Brady or the ineffective assistance of trial or appellate counsel. In terms of the abandonment, Your Honors, the defendant in this case filed a pro se post-conviction petition, which did include what could be referred to as a Brady allegation. In response, the state filed a motion to dismiss, which, I'm sorry, before the state filed its motion to dismiss, counsel was appointed at second stage and filed an amended motion, The amended motion incorporated the pro se petition, didn't it? There was a line which stated that he was incorporating the allegations of the pro se petition. And the pro se petition alleged a Brady violation, didn't it? Correct. So how can we find that it was abandoned? Because, Your Honor, at the subsequent hearing on the motion to dismiss, there was a full-blown hearing. Prior to the beginning of the hearing, the Court specifically went through the issues which were laid out in the motion to dismiss and asked defense counsel, does this address all of the issues that you are presenting? He explicitly told the Court that it did. The Court then listened to argument, made its ruling. During the argument and during the ruling, there was no discussion of the Brady allegations. After the Court completed its ruling, he again asked defense counsel, have we addressed all of the issues that you are presenting to this Court? And defense counsel explicitly again said, yes, Your Honor, we have addressed all of the issues. This clearly demonstrates that the defendant meant to abandon the Brady claim, which was in the pro se petition, and meant to proceed only on the allegations of ineffective assistance of counsel, which are also the allegations of ineffective assistance that are presented here. As far as the 122 requirement, the affidavits in this case are of particular importance because all that the defendant has presented to you in support of each of his claims is a portion of testimony that was given by Christopher Lacy at the co-defendant's trial. And it's correct that in that testimony, it does establish that Christopher Lacy was a federal informant, that he was paid $600, and all of the other information that the defendant has talked to you about, which is in that testimony. However, what is not in that testimony and what is not in the information that the defendant has attached with his post-conviction is anything which would suffice to present really either a Brady claim or an ineffective assistance of counsel claim. The defendant has presented nothing to this Court which shows that the information that he claims he received was not received. He has not presented anything to this Court which would show that the information which was originally given to him about Christopher Lacy being a federal informant. Do you have any documentation that the information was given to him? We don't. Other than the answer that said he was an informant, do you have anything that shows that you told him that he was paid $600? Do you have anything that shows that he was told that he had pending cases at the time that he gave his testimony to the grand jury? Do you have anything in writing? Well, I would answer that in two separate ways, Your Honor. First of all, the State is not the person who has the burden at the second stage of a post-conviction. The defendant has the burden of making a substantial showing of a constitutional allegation, and he also is required by statute 122-2 to provide sufficient affidavits which would support the claim that he's making. Well, you have an answer to discovery, which doesn't have those details that I just set forth. And together with your answer to discovery, we have the testimony at the Hampton trial that showed that these matters existed. So taking those two things together, doesn't it at least raise a question as to whether or not that was ever tendered? I mean, you would think that if you're going to say he's an informant, in the same paragraph you might say, oh, and by the way, we paid him, or the federal government paid him, and he's got some pending cases. I mean, I don't think, you can't argue with the fact that defense counsel needs to know that the State's main witness has pending cases. I mean, there's hundreds of cases that say that. So, I mean, wouldn't you expect that that would be in your answer to discovery? How do you explain that it's not? I would say because he did not have pending cases, which brings me to the other part of my argument. The defendant's entire premise that Christopher Lacey had pending cases is based on this excerpt of testimony from Demetrius Hampton's trial, and specifically the question, which is on page 54 of the common law record, where the question is asked of him, and you were still hoping that you wouldn't have to go to a federal penitentiary for a long time for that, weren't you? And that's what they're relying on to show that Christopher Lacey still had these outstanding federal cases. But if you take a careful look at the excerpts of the transcripts that are in there, you'll see that the transcript jumps from page 185 to 188. So we have absolutely no idea when in time Christopher Lacey was hoping that he wouldn't have to go to the federal penitentiary, when in time Christopher Lacey was hoping to cooperate with the federal authorities. We don't know if the question that precedes this is asking Christopher Lacey why he became a federal informant in the first place. And if you look at that question coupled with other parts of the transcript, it becomes clear that by the time that this murder took place in December of 1999, these federal cases were not outstanding. Christopher Lacey tells you that in November of 1998, when he was in Logan Correctional, he was transferred to MCC, that the federal authorities came and talked to him and told him, if you cooperate with us, we'll help you on those drug cases. He testifies, I never had to go to a judge before that. I was never sentenced. I was never arrested on those. These were not pending cases. These were cases that were resolved when he became a federal informant. So there was no reason for us to tender information about these cases because they didn't exist by the time this murder took place. And as far as... But didn't he subsequently get some type of sentence? No. When did he get that sentence? He specifically testifies, I never went before a court on this. I was never sentenced. And in the defendant's brief, he states that Christopher Lacey received three years and served seven months on these federal cases. That's incorrect. If you look at the transcript very carefully, it's very clear that the three-year sentence which he served was on his two state cases. In 1997, the defendant engaged in four drug transactions. Two of them were with undercover informants working with the federal authorities. Two of them were with undercover informants working with the state authorities. And the transcripts make very clear that he was arrested on the state charges in 1997 and the three-year sentence that he was serving that he refers to, which the defendant accredits to the federal cases, was actually on the state cases and that he was never sentenced and that he never appeared before a judge on the federal cases. When did he get the state sentence? In 1997, and that's the one that he served. That's what he was in Logan for. Right. That's what he's in Logan for. So it's our position that there is nothing to tender. Let me ask you this. When Lacey testified in this case, did the defense explore on cross-examination anything about him being an informant? They did not, but if you look at the context of Lacey's testimony, in his direct testimony, Christopher Lacey essentially, to use a colloquial term, flips on the state and he rescinds his pretrial statements. So at that point, defense counsel makes the strategic decision, the smart decision, instead of going after Christopher Lacey's, the fact that he was a federal informant years ago, prior to this murder even taking place, he jumps on that. He jumps on the fact that Christopher Lacey is no longer identifying his client, and he makes the decision, which he is completely entitled to do, to change his trial strategy at that point. What about the argument that, what was it, the 98 agreement was actually for future work, and then this was one of the future assignments? The $600 and it was for future. Again, there is nothing in the record which would support that, and certainly it would seem that if this was part of the future work, that instead of going to talk to a detective at the Robbins Police Department, that he would have gone and talked to whatever federal agent he was working with. He doesn't do that. Instead, as any eyewitness would do, he goes to the police station and tells them what he saw. There's, and again, it's sort of similar to all of the other allegations that are in here. It's an allegation that's made without anything to support it, and I understand Justice Palmer's position, but it's. I haven't taken a position. As far as does it raise a question where there's nothing in the record, but the fact remains, it is his burden. He has to make a substantial showing of the allegations that he presents to the court, and he has not done that. Well, Mr. Reina took the position that his third prong of his argument is that Lacey even said that at the time that this was all going on, he was uncertain as to the status of his federal cases, or his federal, let's say, transactions. And so I think his argument is that if at the time that he's giving evidence to the state, I understand that he later flips, but at the time that he gives evidence to the police and the grand jury, he's uncertain as to the status of whether or not he's going to be charged federally, and that may have affected the nature of his cooperation, and at least the trier fact should have known about that. And, again, I would say that if you... I guess there's two ways. One is how are you supposed to know? You mean the state's trial attorneys. How are you supposed to know what Lacey is uncertain about with regard to the federal government if there's no indication that you're aware of that? But there's also that ineffective assistance question. I mean, isn't this something that counsel should have gone into? In terms of the way it affects... I mean, you're not going to admit this, but, I mean, this is a close case. I mean, all you've got is a witness who flipped, and so you've got your 1-15-10 statements, and that's it. That's all you've got. And on the other side, there's an alibi. So it's an extremely close case. So the question is, shouldn't the trial judge, the cement trial, shouldn't the trial judge know about all this stuff that's going on in Lacey's mind about whether he's going to be charged by the feds, whether he got paid $600, why he got let go on the domestic case? I mean, isn't all that stuff something the trial judge should know about in a close case? Well, I would have two answers for that. The first one being the entire premise that Christopher Lacey thought these federal cases were still hanging on over his head are based on one line of the transcript at Demetrius Hampton's trial. It's not like Christopher Lacey comes out during that trial and testifies, I thought these federal cases were still hanging over my head. He never says, I thought these federal cases were open, I thought I could still be charged with those federal cases. There's nothing like that in the transcript. The defendant's extrapolating the one question that I read you from a portion of the transcript that we have no idea what came before it because we have three pages missing, where he talks about the fact that he doesn't want to serve a long time in the federal judiciary. Let me tell you something. If there was something in the rest of those transcripts that would have helped you, I'm sure we would have seen it. But I'm saying his interpretation is that the federal cases were still hanging over Christopher Lacey's head. And it's just as valid an interpretation that those federal cases were done over and closed in 1998, and there are excerpts in the transcript from Demetrius Hampton's trial that support that. So if you're looking at that, that is not a substantial showing that Christopher Lacey had a concern that these federal cases were still hanging over his head. He specifically testifies. Where does it say in the transcript that those cases are resolved? I think you already said it, but I'm going to ask you again. Specifically, he says on page 50 that they never arrested him on those cases, that he never had to go before a judge, that they told him that they would take care of the two one-ounce cases if he would work for them, that they gave him help on the two one-ounce cases. He never had to face trial or sentencing or anything on those two one-ounce cases. Aren't you stretching that a little bit in terms of saying that that means they're resolved? Isn't another fair interpretation of that that those cases are out there and they're on your shoulders unless you cooperate with us the way we want you to? This is back in 1997. They tell him that they'll take care of those cases. If you work for us. If you work for us. Well, what does that mean, if you work for us? How long does that last? Was there an end to that contract? I can't answer that question. Maybe an evidentiary hearing would answer that question. Certainly it would at least suggest when they say we'll take care of these cases for you if you work for us. And four years later, nothing's happened on those cases. He's never appeared in court. He's never been charged. Nothing's happened on those. What's the statute of limitations on a federal drug case? I apologize. You know what? Don't apologize because I don't know either. Again, I would say there has to be more than a speculation or an interpretation or a reading, a favorable reading of something. That's not what the statute requires. That's not what the Post-Conviction Hearing Act requires. It's a substantial showing of a constitutional violation. It's affidavits that support the claim that you're making. And all the defendant has presented you with is his interpretation of what something means. Is there anything before us that shows that the state was aware of this? I mean, you did disclose that he was an informant. But is there anything in the record that shows us that the state was aware of the potentiality of these two federal cases, that the state knew about those two transactions that were out there? The only thing that we knew would be reflected in the questions that we asked, which, I mean, there's nothing that indicates that we knew something that we didn't tell them about. Well, that's what I'm asking. I mean, I didn't see anything in what was submitted to us that shows that the state was aware. I'm just trying to see if I missed something. That the state was aware of the potentiality of these two cases that Lacey talked about in the Hampton case. No. And, I mean, if you look at what we tendered to the defendant, you know, we tendered the fact that he was a federal informant. There's certainly an indication in the record that we tendered the fact that he was a paid federal informant. There's... Well, I think they argue with you about that. Right. And that's why I say there's an indication in the record that we tendered it.  It's a discovery receipt for a document from, I believe, ATF, which indicates the defendant was a federal informant. I'm going to ask them about that, but they say in their... I think it's in their reply that they say that it's not at the place in the record that you say it is. Well, what they say in their brief is that... I don't know if it's in their reply. What is referenced in the record is our motion to dismiss, which I readily admit, that is what I reference, because the actual document was not included by defendant with his post-conviction. In our motion to dismiss, we refer to this discovery receipt. However, it's not included, and what I refer to is our motion to dismiss. Did Hampton's trial proceed at the same time as Kelly's trial? Hampton's trial is 22 months later. 22 months later. All right. You want to wrap up then? I know we've asked you a lot of questions. So for those reasons, Your Honor, and for those that are in the people's brief, we would ask you to affirm the second-stage dismissal in this case. Thank you. Thank you. Mr. Reynon? Thank you, Your Honor. Just briefly, I want to state that I completely agree with the State that Lacey was not charged with the federal cases. I mean, that's the problem here, is that we don't know that they were dismissed with prejudice. Well, the State says that their reading of the record from the Hampton trial shows that those cases were all wrapped up and done for. Right, right. But they're deciding that the case is resolved because Lacey wasn't charged. And as Your Honor pointed out, we just don't know the terms of the agreement. Was it for future work? Were those cases dismissed with prejudice? Are they still out there? We just don't know. What we do know is Lacey believed he could still be charged with those cases, and he had not yet been charged. So that circumstance Are you coming at this issue by way of Brady or by way of ineffective assistance, or both? Both. Counsel should have discovered the terms of the federal agreement and introduced this evidence that there were these outstanding cases. Or the State should have disclosed the terms of the agreement. And Your Honor asked if there was anything in the record indicating the State knew about the terms. And counsel admitted that the State supposedly has a discovery receipt showing that they tendered information related to the agreement. Nobody has seen this receipt, but that would show that they had information that could have been discovered by counsel or should have been disclosed by the State. Anything else? I think that's all, Your Honor. Again, Lacey's testimony was the only evidence supporting Kelly's conviction. And he's made a substantial showing that trial counsel did not introduce relevant evidence that Lacey was released from custody on a State charge before implicating Kelly. And that he had a federal agreement and received payment to work with the federal government. And therefore gave the judge no reason to discredit the prior statements. And we would ask for an evidentiary hearing. All right. Thank you, Mr. Rainey. Thank you. Counsel, thank you for your excellent presentations. We'll take the matter under advisement. This Court will stand in recess until 1115. Thank you.